Belknap
No. 2007-183

HOWARD JOSEPH GUYOTTE & a.

v.

MICHAEL O'NEILL & a.

Argued: May 7, 2008
Opinion Issued: August 20, 2008

*Edward D. Philpot, Jr., PLLC*, of Laconia (*Edward D. Philpot, Jr.* on the brief and orally), for the plaintiffs.

*Walker & Varney P.C.*, of Wolfeboro (*Robert C. Varney* on the brief and orally), for the defendants.

*Gallagher, Callahan & Gartrell, P.C.*, of Concord (*Ari B. Pollack* on the memorandum), for the Home Builders & Remodelers Association of New Hampshire, as *amicus curiae*.

*Gagliuso & Gagliuso, P.A.*, of Merrimack (*Richard C. Gagliuso* and *Kelly J. Gagliuso* on the memorandum), for Associated Builders & Contractors, NH/VT. Chapter, as *amicus curiae*.

GALWAY, J. The plaintiffs, Howard Joseph Guyotte and Louise A. Guyotte, appeal, and the defendants, Michael O'Neill and Bay Shores Building and Remodeling, LLC, cross-appeal, from a jury verdict in Superior Court (*Smukler,* J.) in favor of the defendants. We affirm.

The record supports the following facts. In 2004, the plaintiffs contracted with the defendants to construct a house in Laconia. The project was financed by a construction loan from Centrix Bank (bank). By the terms of the loan agreement with the bank, money was to be disbursed to the plaintiffs in lump sums at various intervals to pay for the construction as work was completed. To receive each disbursement, the plaintiffs were required to submit to the bank a "Builder's Waiver of Mechanic's Lien" (lien waiver) signed by the defendants. A total of six lien waivers were submitted to the bank.

Each lien waiver stated, in relevant part:

> The undersigned states that as of the date of this waiver all invoices and payments due from the owner for this property have been paid except for the following [invoice.]
>
> The undersigned hereby releases any and all lien, or claim or right to lien, on said above described building and premises under the statutes of the State of New Hampshire relating to mechanics liens, on account of labor or materials or both, furnished by the undersigned to the account of said property for the period through the date of _____ (if not filled in presumed to be the date of the waiver) with the exception of the above stated outstanding invoice(s).
>
> Upon payment of the outstanding invoice(s) the undersigned releases the owner and Centrix Bank & Trust of and from any and all claims for monies due and owing [as] of the date of this waiver, and all rights to assert a Mechanic Lien pursuant to New Hampshire law, relative to the same. The undersigned states that this waiver shall be enforceable, and that we have not been induced by any party to execute this Waiver, and the facts as asserted in it are voluntarily given under pains and penalty [of] perjury.

Except for different dates and amounts requested, the lien waivers were identical. The plaintiffs paid the defendants pursuant to the first five lien waivers, the last of which was dated February 14, 2005. The plaintiffs admit that the defendants were not paid pursuant to the sixth lien waiver dated April 25, 2005.

In May 2005, due to a disagreement with the plaintiffs, the defendants ceased work and the plaintiffs hired other contractors to complete the job. In November 2005, the plaintiffs sued the defendants, alleging that they had failed to build the house according to the specifications and that they had failed to complete work required by the parties' contract. The defendants counterclaimed, alleging that the plaintiffs had breached the parties' agreement by failing to pay amounts due under the contract, and that the plaintiffs had been unjustly enriched.

At the close of evidence, the plaintiffs orally moved to dismiss the defendants' claims, arguing that the defendants had not complied with discovery requests and that the evidence was insufficient to support their claims. Additionally, the plaintiffs contended that the defendants' claims were barred by the lien waivers. The trial court denied the plaintiffs' claim that the evidence was insufficient to go to the jury, but did not address

whether the defendants had complied with the plaintiffs' discovery requests. The trial court also declined to rule on the plaintiffs' argument regarding the lien waivers, but allowed the plaintiffs to address it later by memorandum. Subsequently, the jury found for the defendants and awarded them $43,422.84 in damages. The plaintiffs filed various post-trial motions including: a renewal of their oral motion to dismiss; motions for judgment notwithstanding the verdict (JNOV); motions to set aside the verdict; and a motion for remittitur. The trial court remitted the damage award to $35,324.00, but otherwise denied the plaintiffs' motions. After ensuing motions for clarification and reconsideration were denied, the parties cross-appealed.

As several of the plaintiffs' arguments on appeal relate to the lien waivers, we address them together. The plaintiffs first contend that the trial court erred in denying their motions to dismiss, for JNOV, and to set aside the verdict, which all argued that the defendants' claims were barred by the lien waivers. According to the plaintiffs, the lien waivers act as general releases both of the right to assert mechanic's liens and any claims by the defendants for "any and all monies due as of the date of the release." More specifically, the plaintiffs argue that the defendants are barred from asserting their claims for any "extra" items—that is, any items beyond those covered in the parties' construction contract—which were not invoiced, as well as for work performed pursuant to the contract that predated the effective date of the fifth lien waiver. Because the defendants' claims are barred by the lien waivers, the plaintiffs contend, the trial court erred in denying their motions to avoid or overturn the jury's verdict in favor of the defendants. The defendants counter that the plaintiffs' interpretation of the lien waivers is erroneous, because the use of the phrase "relative to the same" in the lien waivers prevents them from acting as general releases. Alternatively, the defendants argue that if the plaintiffs' reading is correct, the evidence at trial demonstrated that their claims were not barred by the lien waivers.

Though we review each motion ruled upon by the trial court under a different standard, we conclude that under any of the applicable standards, the plaintiffs do not prevail. The standard of review for a motion to dismiss (or nonsuit) is to take the evidence presented and determine if, viewed most favorably to the non-moving party, it establishes a *prima facie* case. *Renovest Co. v. Hodges Development Corp.*, 135 N.H. 72, 75 (1991); *see also Morrill v. Tilney*, 128 N.H. 773, 777 (1986). Denying the motion is proper if the defendants' allegations are reasonably susceptible of a construction that would permit recovery. *Bohan v. Ritzo*, 141 N.H. 210, 212 (1996).

Similarly, a party is entitled to JNOV only when the sole reasonable inference that may be drawn from the evidence, which must be viewed in

the light most favorable to the nonmoving party, is so overwhelmingly in favor of the moving party that no contrary verdict could stand. *Blouin v. Sanborn*, 155 N.H. 704, 706 (2007). In deciding whether to grant the motion, the trial court cannot weigh the evidence or inquire into the credibility of witnesses. *Id.* If the evidence adduced at trial is conflicting, or if several reasonable inferences may be drawn, the court must deny the motion. *Id.* Our standard of review of a trial court's denial of a motion for JNOV is extremely narrow and we will not overturn the trial court's decision absent an unsustainable exercise of discretion. *Id.*

Finally, a jury's verdict may only be set aside if it is conclusively against the weight of the evidence or if it is the result of mistake, partiality, or corruption. *Mortgage Specialists v. Davey*, 153 N.H. 764, 771 (2006). For a verdict to be conclusively against the weight of the evidence it must be one that no reasonable jury could return. *Id.* We will not overturn the trial court's denial of a motion to set aside the jury verdict unless it is an unsustainable exercise of discretion. *Id.*

■ As noted, the plaintiffs contend that the lien waivers act as general releases of the defendants' rights regarding both mechanic's liens and any claims for money for work done or materials provided. Even if we accept the plaintiffs' interpretation as controlling, which we do solely for purposes of this appeal, the defendants' claims would not be barred. By their terms, the lien waivers provide that, as of their effective dates, "all invoices and payments due" have been paid, and that "all claims for monies due and owing" are waived. Regarding the defendants' claims for "extras," O'Neill testified the parties had agreed that the cost of any "extra" items, no matter when work on those items was undertaken, would be paid at the completion of the work, when the construction loan was converted to a conventional mortgage. There was, therefore, evidence before the jury that the defendants' claims for "extra" items were not claims for "monies due and owing" or for "payments due" at the effective date of any of the lien waivers. This evidence permitted the jury to infer that regardless of when the "extras" were completed, the defendants' claims for them only ripened into claims for "monies due and owing" well after the execution of the lien waivers, when the loan was converted and the defendants were not paid. Because there was evidence that the defendants' claims for "extras" were not barred by the lien waivers, even under the standard most favorable to the plaintiffs, we conclude that the trial court did not err in denying their motions.

■ The plaintiffs argue that permitting such claims to survive would undermine the purpose of the lien waivers to maintain the priority of the bank's loan over any potential mechanic's lien. *See* RSA 447:12-a (2002)

(providing that a mechanic's lien secured by an attachment has priority over any construction mortgage). Here, however, the defendants do not challenge the priority of the bank's loan, and any opportunity to secure or perfect the mechanic's lien that arises from the provision of labor or materials, *see Duke/Fluor Daniel v. Hawkeye Funding*, 150 N.H. 581, 583 (2004), has passed. *See* RSA 447:9, :10 (2002). Moreover, the defendants do not dispute that the lien waivers were effective in waiving their right to assert a lien, but only whether they were effective in waiving their claims for payment. Thus, we reject the plaintiffs' argument that permitting the defendants to pursue their claims undermines the purpose of the lien waivers.

Regarding the defendants' claim for money owed under the contract, O'Neill testified that the defendants were owed $12,038 for work completed pursuant to the parties' contract. With respect to this claim, he testified regarding the work done, and amounts owed, in the context of an exchange relating to work appearing on the invoice submitted with the sixth lien waiver. Also during this testimony, he stated that the plaintiffs were due certain credits for work not completed, but nevertheless referenced on the invoice accompanying the sixth lien waiver. Thus, there was evidence that the defendants' claims under the contract arose from items referenced in the sixth lien waiver. The plaintiffs admitted that because they did not pay the defendants pursuant to the sixth lien waiver, that lien waiver was never effective. From this evidence, the jury could find that this claim by the defendants was for work covered by the sixth lien waiver, and that since the sixth lien waiver was not paid, the defendants could collect on their claim for work under the contract. Accordingly, even under the standard most favorable to the plaintiffs, we conclude that it was not error for the trial court to deny their motions relative to the defendants' claim for amounts due under the contract.

Next, the plaintiffs argue that the trial court erred in not granting remittitur in the amounts requested. The defendants, in their sole argument on cross-appeal, contend that the trial court erred in remitting the award at all.

█ Whether remittitur should be ordered rests with the trial court's sound discretion. *Boynton v. Figueroa*, 154 N.H. 592, 606 (2006). Direct review of a damages award is the responsibility of the trial judge, who may disturb a verdict as excessive, or inadequate, if its amount is conclusively against the weight of the evidence or if it is manifestly exorbitant. *Id.* The amount of a verdict is conclusively against the weight of the evidence only if no reasonable jury could have reached it. *Id.* Once the trial court has reviewed the amount of the verdict under this standard, we will not disturb

the judge's finding unless no reasonable person could make it. *Id.* at 606-07. Absent an unsustainable exercise of discretion, we will not reverse the trial court's decision. *Id.* at 607. The party seeking to modify the verdict's amount bears a heavy burden. *Id.* Based upon our review of the record, we conclude that the trial court did not engage in an unsustainable exercise of discretion in remitting the verdict.

■ As discussed, the defendants raised claims for "extras" and for amounts due under the contract, and O'Neill testified to the amounts owed for that work. Because there was evidence that those claims were not barred by the lien waivers, the jury could award damages to the defendants for their claims. The plaintiffs contend, however, that the jury did not take into account various credits and offsets to which they were entitled when calculating its award. Our review of the record shows that there was conflicting testimony about at least some of the credits claimed by the plaintiffs. For example, the plaintiffs contend that the defendants' claim for permitting fees should be remitted because the money for permits was included in the first requisition and disbursement. O'Neill testified, however, that the money was not paid from the first disbursement, and that the permits were not part of the scope of his work. The jury was free to accept or reject this and other testimony and evidence of credits and offsets, and to determine the weight and credence to give to this evidence in making its award. *See Transmedia Restaurant Co. v. Devereaux*, 149 N.H. 454, 461 (2003). We conclude that the trial court's decision not to remit the award consistent with the offsets or credits claimed by the plaintiffs was not an unsustainable exercise of discretion.

■ Regarding the amount the trial court actually remitted, the trial court decreased the jury's award from $43,422.84 to $35,324.00. O'Neill testified to being owed $12,038 for work under the contract and $23,286 for "extras," a total of $35,324. In fact, he specifically testified that the defendants' "total claim" was for $35,324. The defendants do not point to any place in the record where they state claims for any other amounts. Thus, the trial court could reasonably find that any award in excess of $35,324 was against the weight of the evidence. Therefore, we will not disturb the trial court's decision to remit the award.

Finally, the plaintiffs contend that the defendants committed various discovery violations. When the plaintiffs raised the matter with the trial court in their oral motion to dismiss, the trial court stated that it understood the plaintiffs to argue that: (1) although O'Neill testified to certain costs, supporting documents, such as his "daybook," had not been disclosed in discovery, and, therefore, the defendants' claims should be dismissed because the evidence was insufficient to permit the claims to go

to the jury; and (2) the failure to disclose certain requested discovery justified the sanction of dismissal. Despite being given the opportunity to do so, the plaintiffs did not object to the trial court's characterization of their arguments. Thus, we address the arguments in the same manner as did the trial court.

■ Regarding the plaintiffs' argument that the failure to disclose certain items constituted a discovery violation sufficient to justify the sanction of dismissal, we conclude that the issue has not been preserved for appellate review. We will not review any issue that was not raised in the notice of appeal. *State v. Blackmer*, 149 N.H. 47, 49 (2002). The only issue raised by the plaintiffs in their notice of appeal relative to a motion to dismiss is the argument that the trial court erred in not dismissing the defendants' claims based upon the lien waivers. Because the trial court's ruling on the plaintiffs' motion to dismiss for discovery violations was not preserved, we do not address it.

Regarding their claim that the evidence was insufficient to support the defendants' claims, the plaintiffs contend that during discovery they requested the production of certain documents and supporting evidence relating to the defendants' claims, and that some items were disclosed. According to the plaintiffs, however, during trial O'Neill testified to various costs and expenses which were not supported by the disclosed documents. The plaintiffs argue that because supporting documents were not disclosed in discovery, the trial court erred in permitting O'Neill's testimony about these costs and expenses. Also, the plaintiffs argue that without the supporting documentation they requested, O'Neill's testimony was insufficient to support the defendants' claims.

We review a trial court's decision on the management of discovery and the admissibility of evidence under an unsustainable exercise of discretion standard. *Figlioli v. R.J. Moreau Cos.*, 151 N.H. 618, 626 (2005). To meet this standard, the plaintiffs must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of their case. *Id.* We review sufficiency of the evidence claims as a matter of law and uphold the findings and rulings of the trial court unless they are lacking in evidential support or tainted by error of law. *Fisher v. Minichiello*, 155 N.H. 188, 190 (2007). We accord considerable weight to the trial court's judgments on the credibility of witnesses and the weight to be given testimony. *Id.* We view the evidence in the light most favorable to the defendants. *Id.*

During trial the plaintiffs objected to O'Neill's testimony regarding various items of damage that, they argued, were without supporting documentation, and the trial court either overruled their objections or limited O'Neill's testimony. On appeal, the plaintiffs argue that because

O'Neill was permitted to testify about his expenses, without having disclosed the requested documents, they were "denied the opportunity to cross examine [O'Neill] on those claims, to attack the costs associated with those claims or the reasonableness of those claims, to their prejudice." We conclude that the plaintiffs have not shown that the trial court's decision to permit O'Neill's testimony prejudiced their case.

■ The defendants introduced as evidence numerous invoices and receipts for work done on the plaintiffs' home, and O'Neill testified to various costs incurred, either as "extras" or as part of the contract, which were not paid. On cross-examination, the plaintiffs had numerous opportunities to question whether the documents in evidence in fact supported the defendants' claims, and to point out that his memory about the costs of some items might be inaccurate, or not in accord with the evidence provided. Thus, the plaintiffs had the opportunity to cross-examine O'Neill on the defendants' claims and on their amounts and reasonableness. Accordingly, we do not agree that to the extent there was any failure by the defendants to disclose, such failure prejudiced the plaintiffs' case.

■ As to their argument that the evidence was insufficient to permit the defendants' claims to go to the jury, the trial court ruled that O'Neill's sworn testimony, when taken in the light most favorable to the defendants, and with issues of credibility being resolved in the defendants' favor, was sufficient to support the defendants' claims. We agree with the trial court. O'Neill testified about the work completed and the money owed for that work. Even without the documentation that the plaintiffs contend was necessary, this testimony, taken in the light most favorable to the defendants, was sufficient to survive a motion to dismiss and to permit the claims to go to the jury. We, therefore, uphold the decision of the trial court.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.