Merrimack
No. 2012-162

VICTOR VIRGIN CONSTRUCTION CORP.

v.

NEW HAMPSHIRE
Department of Transportation

Argued: June 4, 2013
Opinion Issued: August 21, 2013

*D'Amante, Couser, Pellerin, & Associates, P.A.*, of Concord (*Bruce J. Marshall* on the brief and orally), for the plaintiff.

*Michael A. Delaney*, attorney general (*Kevin H. O'Neill*, assistant attorney general, on the brief and orally), for the New Hampshire Department of Transportation.

HICKS, J. The plaintiff, Victor Virgin Construction Corporation (Virgin), appeals an order of the Superior Court (*Smukler*, J.) remitting a jury award of $1,520,635 to $779,078.80 following an advisory jury finding of liability for breach of contract and a jury finding of negligent misrepresentation by defendant New Hampshire Department of Transportation (DOT). DOT cross-appeals, asking that the award be further reduced. We vacate and remand.

The record supports the following facts. In 2008, Virgin bid on a DOT project to replace a stone box culvert located underneath Depot Road in Hollis. Virgin submitted the lowest bid and was awarded the contract on June 4, 2008.

The construction process was to begin as soon as possible and was scheduled to conclude on August 28, 2008. The initial exchange of plans did not satisfy DOT, which requested several changes from Virgin's subcontractors. Apparently, Virgin was not involved in this exchange and had little or no input into the plans that were submitted to or approved by DOT. These changes resulted in an increase in the scale and scope of the work and caused a significant construction delay, adding almost a year to the project. As a result, the original August date for completion was not met. The project was substantially completed on December 3, 2008, and not completely finished until August 6, 2009.

After completion of the project, DOT paid Virgin the sum agreed to in the contract with only a minor upward adjustment. Virgin sued DOT for both breach of contract and negligent misrepresentation.

DOT moved to bifurcate the trial on the grounds that the breach of contract claim had to be tried without a jury pursuant to RSA 491:8 (2010). The trial court denied the motion, ruling that the jury would decide the negligent misrepresentation claim but would serve only an advisory role as to the breach of contract claim. The jury found, *inter alia*, in favor of Virgin on both of its claims against DOT, awarding over $1.5 million in damages. The award against DOT was based on evidence concerning the expenses incurred completing the project and the subsequent insolvency of Virgin, including the auction sale of its construction equipment.

DOT then moved for a new trial, or, in the alternative, either to set aside the jury award and grant a new trial on damages or to grant remittitur. The trial court granted remittitur, citing the paucity of evidence on the record regarding the value of the items auctioned off because of the insolvency and the losses incurred as a result. The trial court ruled that no reasonable jury could have awarded more than $779,078.80, as any greater amount would have been speculative. However, the trial court specifically did not enter a finding of liability on the breach of contract claim, ruling that the award could be sustained solely on the negligent misrepresentation claim and

denying DOT's motion for a new trial on that basis. Virgin appealed, seeking the jury's full award of $1,520,635 in damages, and DOT cross-appealed seeking a further remittitur.

## I

On appeal, DOT argues for a reduced award of $475,000. It argues that in tort actions, including actions for negligent misrepresentation, "[w]here [the award] exceeds the statutory cap set forth in RSA 541-B, the DOT's liability is limited to the statutory cap." DOT contends that the award was based only upon a claim of negligent misrepresentation and, therefore, the trial court was only allowed to award $475,000 by statute. Virgin argues that its negligent misrepresentation claim is not covered by RSA chapter 541-B (2007 & Supp. 2012) because it does not fall within the categories listed in the statute.

The interpretation of RSA chapter 541-B is a question of law, which we review *de novo*. *Kenison v. Dubois*, 152 N.H. 448, 451 (2005). We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *Id.* We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meanings to the words used. *Id.* When the language of a statute is clear on its face, its meaning is not subject to modification. *See Dalton Hydro v. Town of Dalton*, 153 N.H. 75, 78 (2005).

RSA 541-B:14, I (Supp. 2012) provides, in relevant part:

> All claims arising out of any single incident against any agency for damages in tort actions shall be limited to an award not to exceed $475,000 per claimant and $3,750,000 per any single incident
>
> . . . .

Under RSA 541-B:1, II-a (2007):

> "Claim" means any request for monetary relief for . . . :
>
> (a) Bodily injury, personal injury, death or property damages caused by the failure of the state or state officers, trustees, officials, employees, or members of the general court to follow the appropriate standard of care when that duty was owed to the person making the claim, including *any right of action for money damages which either expressly or by implication arises from any law*, unless another remedy for such claim is expressly provided by law . . . . (Emphasis added.)

■■ We agree with DOT that Virgin's claim for negligent misrepresentation is governed by RSA 541-B:14, I, as a tort "claim," which limits the

possible recovery against the State to $475,000. As we explained in *Laramie v. Stone*, 160 N.H. 419 (2010), "the legislature intended this chapter to govern all claims against the State and/or its employees unless another remedy is specifically provided by statute." *Laramie*, 160 N.H. at 437.

> The broad language of the statute considered as a whole, its comprehensive nature establishing procedures for filing claims with the board of claims and/or the superior court, and its legislative history support the conclusion that the legislature intended that RSA chapter 541-B govern *all actions for damages* against state employees unless otherwise specifically stated.

*Id.* (emphasis added). Therefore, because no other statute provides a remedy, Virgin's negligent misrepresentation claim for monetary damages is subject to the $475,000 cap.

## II

Next, we review the amount of the award granted by the trial court. Virgin argues that the trial court erred in remitting the jury award of $1,520,635 to $779,078.80 because the weight of the evidence was not conclusively against the award and the trial court erred as a matter of law by disturbing the award based upon the record.

DOT, in its cross-appeal, argues that the evidence only supports an award of $9,151.70. In its view, "th[e] sum [awarded to Virgin] is not supported by the record and [is] erroneous as a matter of law." DOT argues that Virgin should only receive $9,151.70 in damages for a two-day delay, at most, caused by DOT providing incorrect coordinates for the project.

█ As the trial court entered judgment and awarded damages only for negligent misrepresentation, a tort claim, the damages awarded cannot exceed $475,000. RSA 541-B:1. Therefore, Virgin's request to reinstate the jury's award of $1,520,635 in damages is denied. We find, however, that there was sufficient evidence on the record for the trial court to reach the $475,000 cap.

█ The law does not require that damages be calculated with mathematical certainty; the method used need not be more than an approximation. *Blouin v. Sanborn*, 155 N.H. 704, 707 (2007). Virgin provided an itemized account of the damages it incurred due to the delay in construction and had an expert witness testify as to the extent of its damages. The majority of the award was based on evidence, marked at trial as exhibit M, showing that Virgin had to pay extra labor and equipment costs as a result of DOT's delays, totaling $664,727.30, to which the judge added $45,758.50 for

additional delays testified to by Victor Virgin. In addition, the trial court credited evidence showing over $7,000 in liquidated damages and over $60,000 in auctioneer fees and commissions that were a consequence of the delays caused by DOT. Further, multiple witnesses testified to, and exhibits confirmed, the fact that DOT's actions led to Virgin's substantial damages. We see no need to address DOT's claim that the auctioneer fees and commissions were not foreseeable since other elements of the damages already exceed the $475,000 cap.

DOT is also incorrect in its argument that the trial court failed to consider the amount that it had already paid Virgin under the contract, which was $408,066.45. The damages calculated by the trial court were only those that occurred due to the increase in work, and the payment of $408,066.45 was not considered because it was for the services originally agreed to by Virgin and not the increased work from which the damages stem. Based upon the record, the trial court could reasonably conclude that Virgin suffered at least $475,000 in tort damages, the maximum allowed under RSA 541-B:1.

■ The statutory cap imposed by RSA 541-B:1 does not apply to damages under a breach of contract claim. We disagree with Virgin, however, that this allows the trial court to award damages over the tort cap without a finding of liability under a contract theory of recovery. An amount above $475,000 may be awarded only if such a finding is made. However, the trial court made no ruling regarding liability or damages on the contract claim. Thus, we remand the case for a determination by the trial judge, as the finder of fact, as to liability for breach of contract, and, if liability does lie, the amount of damages sustained.

*Vacated and remanded.*

DALIANIS, C.J., and LYNN and BASSETT, JJ., concurred.